| PROB 22 (Rev. 2/88) | | DOCKET NUMBER *(Tran. Court)* |
|---|---|---|
| **TRANSFER OF JURISDICTION** | | 14-00467-001 |
| | | DOCKET NUMBER *(Rec. Court)* |
| | | 17-80013-TP- |

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE: | DISTRICT | DIVISION MIDDLEBROOKS |
|---|---|---|
| **Adam Gottbetter** FILED by ___ D.C. MAY 1 5 2017 STEVEN M. LARIMORE CLERK U.S. DIST. CT. S.D. OF FLA. - W.P.B. | New Jersey | |
| | NAME OF SENTENCING JUDGE Jose L. Linares | |

| OFFENSE | DATES OF PROBATION/ SUPERVISED RELEASE: | FROM | TO |
|---|---|---|---|

**OFFENSE**

18:371.F; Conspiracy To Defraud The United States

### PART 1 - ORDER TRANSFERRING JURISDICTION

UNITED STATES DISTRICT COURT FOR THE New Jersey

    IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the Southern District Florida upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

___4/24/17___
Date

_____
United States District Judge

*This sentence may be deleted in the discretion of the transferring Court.

### PART 2 - ORDER ACCEPTING JURISDICTION

UNITED STATES DISTRICT COURT FOR THE Southern District Florida

    IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

___May 2, 2017___
Effective Date

_____
United States District Judge

AO 245B (Mod. D/NJ 12/06) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of New Jersey

UNITED STATES OF AMERICA

v.                                                    Case Number    2:14-CR-467-JLL-01

ADAM S. GOTTBETTER

Defendant.

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, ADAM S. GOTTBETTER, was represented by MARC E. KASOWITZ, ESQ.

The defendant pled guilty to count(s) ONE of the INFORMATION on SEPTEMBER 3, 2014. Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date of Offense | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to commit securities fraud and mail fraud | 06/2012 - 11/2103 | ONE |

As pronounced on May 26, 2015, the defendant is sentenced as provided in pages 2 through 7 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $100.00, for count(s) ONE, which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the _26_ day of ,MAY, 2015.

JOSE L. LINARES
United States District Judge

33432

AO 245B (Mod. D/NJ 12/06) Sheet 2 - Imprisonment

Judgment – Page 2 of 7

Defendant:      ADAM S. GOTTBETTER
Case Number:    2:14-CR-467-JLL-01

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 18 Months, on Count 1 of the Information.

The Court makes the following recommendations to the Bureau of Prisons: a facility for service of this sentence as near as possible to the defendant's home address.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons Monday, July 13, 2015 at or before Noon.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on _____ To _____

At _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
        Deputy Marshal

AO 245B (Mod. D/NJ 12/06) Sheet 3 - Supervised Release

Judgment – Page 3 of 7

Defendant: ADAM S. GOTTBETTER
Case Number: 2:14-CR-467-JLL-01

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 1 year.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the Probation Office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the standard conditions that have been adopted by this court as set forth below.

The defendant shall submit to one drug test within 15 days of commencement of supervised release and at least two tests thereafter as determined by the probation officer.

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release and shall comply with the following special conditions:

NEW DEBT RESTRICTIONS

You are prohibited from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of the U.S. Probation Office. You shall not encumber or liquidate interest in any assets unless it is in direct service of the fine and/or restitution obligation or otherwise has the expressed approval of the Court.

SELF-EMPLOYMENT/BUSINESS DISCLOSURE

You shall cooperate with the U.S. Probation Office in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, you shall provide the U.S. Probation Office with full disclosure of your self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F (Request for Self Employment Records), or as otherwise requested by the U.S. Probation Office.

AO 245B (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Defendant:     ADAM S. GOTTBETTER
Case Number:   2:14-CR-467-JLL-01

### STANDARD CONDITIONS OF SUPERVISED RELEASE

While the defendant is on supervised release pursuant to this Judgment:

1)  The defendant shall not commit another federal, state, or local crime during the term of supervision.

2)  The defendant shall not illegally possess a controlled substance.

3)  If convicted of a felony offense, the defendant shall not possess a firearm or destructive device.

4)  The defendant shall not leave the judicial district without the permission of the court or probation officer.

5)  The defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.

6)  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

7)  The defendant shall support his or her dependents and meet other family responsibilities.

8)  The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

9)  The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.

10) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

11) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

12) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

13) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

14) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

16) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

(17) You shall cooperate in the collection of DNA as directed by the Probation Officer.

*(This standard condition would apply when the current offense or a prior federal offense is either a felony, any offense under Chapter 109A of Title 18 (i.e., §§ 2241-2248, any crime of violence [as defined in 18 U.S.C. § 16], any attempt or conspiracy to commit the above, an offense under the Uniform Code of Military Justice for which a sentence of confinement of more than one year may be imposed, or any other offense under the Uniform Code that is comparable to a qualifying federal offense);*

(18) Upon request, you shall provide the U.S. Probation Office with full disclosure of your financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns.  With the exception of the financial accounts reported and noted within the presentence report, you are prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge

AO 245B (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Judgment – Page 5 of 7

Defendant:     ADAM S. GOTTBETTER
Case Number:   2:14-CR-467-JLL-01

and approval of the U.S. Probation Office. You shall cooperate with the Probation Officer in the investigation of your financial dealings and shall provide truthful monthly statements of your income. You shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Office access to your financial information and records;

(19) As directed by the U.S. Probation Office, you shall participate in and complete any educational, vocational, cognitive or any other enrichment program offered by the U.S. Probation Office or any outside agency or establishment while under supervision;

(20) You shall not operate any motor vehicle without a valid driver's license issued by the State of New Jersey, or in the state in which you are supervised. You shall comply with all motor vehicle laws and ordinances and must report all motor vehicle infractions (including any court appearances) within 72 hours to the U.S. Probation Office;

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed) _____

                              Defendant                                    Date


                 _____
                         U.S. Probation Officer/Designated Witness          Date

AO 245B (Mod. D/NJ 12/06) Sheet 5 - Fine

Judgment – Page 6 of 7

Defendant:     ADAM S. GOTTBETTER
Case Number:   2:14-CR-467-JLL-01

**FINE**

The defendant shall pay a fine of $60,000.

This fine, plus any interest pursuant to 18 U.S.C. § 3612(f)(1), is due immediately and shall be paid in full within 30 days of sentencing.

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed. See 18 U.S.C. § 3614.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B (Mod. D/NJ 12/06) Sheet 6 - Restitution and Forfeiture

Defendant:       ADAM S. GOTTBETTER
Case Number:   2:14-CR-467-JLL-01

## RESTITUTION AND FORFEITURE

### FORFEITURE

The defendant is ordered to forfeit the following property to the United States:

$344,966.55 in U.S. Currency.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.

GSG/JK/NG2011R0072

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

ADAM S. GOTTBETTER

: Hon. Jose L. Linares
:
: Criminal No. 14-**467** (JLL)
:
: 18 U.S.C. § 371

## INFORMATION

The defendant having waived in open court prosecution by Indictment,

the United States Attorney for the District of New Jersey charges:

## RELEVANT ENTITIES AND INDIVIDUALS

1.   At all times relevant to this Information:

a.   Defendant ADAM S. GOTTBETTER ("GOTTBETTER") was a

resident of New York, New York, a licensed attorney, and the Managing Partner

of Gottbetter & Partners LLC, a securities and corporate law firm based in New

York, New York, which he founded. Among other things, GOTTBETTER

marketed himself as an expert in taking private companies public through a

reverse merger process, pursuant to which a private company merged with a

public shell company, thereby allowing the private business to be publicly

traded. GOTTBETTER variously referred to this reverse merger process as an

"Alternative Public Offering," or his trademarked "Gottbetter Public Offering,"

and according to his law firm's website, its "lawyers manage[d] all of the steps

required to complete a reverse merger, from due diligence, review of the

business plan, negotiating the merger or acquisition, structuring the

transaction to drafting legal documents, including the private placement

1

memorandum and the registration statement." In addition, GOTTBETTER

owned Gottbetter Capital Markets, LLC, a registered broker-dealer, which

"act[ed] as a placement agent for public and private offerings" and Gottbetter

Capital Group, Inc., which "provide[d] financing sources, partners and

strategies for public investments in private equities (PIPEs), bridge loans,

reverse mergers and self-underwritten public offerings."

      b.    Co-conspirator #1 ("CC#1") was a resident of Rumson, New

Jersey and was the managing member of a hedge fund.

      c.    Co-conspirator #2 ("CC#2") was a Canadian citizen residing

in London, England, who promoted and solicited private financing for public

companies.

      d.    Co-conspirator #3 ("CC#3") was a Canadian citizen and

resident of Vancouver, British Columbia, who promoted "penny" or "micro-cap"

stocks – the stocks of publicly traded companies with low share prices that

often traded on quotation services and marketplaces operated by OTC Markets

Group Inc., such as OTCBB, OTC QB, OTC Pink, or Pink Sheets.

      e.    Dynastar Holdings, Inc. ("DYNA") was a Nevada corporation

with its headquarters in Louisville, Kentucky. DYNA held itself out to be a

social media and direct marketing business, and its common stock was quoted

under the symbol DYNA on the OTC Pink.

      f.    Lido International Corp. ("LIDO") was a Nevada corporation

incorporated in or around October 2012. In its public filings with the United

States Securities and Exchange Commission, LIDO claimed that it was a

2

development stage company with limited operations; that it was headquartered in Sonsonate, El Salvador; and that its intent was to engage in "the consulting business in commercial cultivation of champignon mushrooms." On or about September 5, 2013, LIDO announced that it had changed its name to "HBP Energy Corp." ("HBPE") in order to "facilitate" its ongoing "discussions" with Firebird Petroleum, Inc., a private Texas corporation, "regarding a possible business combination." Despite its name change, HBPE's common stock was quoted on the OTC QB marketplace under its old symbol "LIDO."

## OVERVIEW OF THE STOCK MANIPULATION SCHEME

2. From at least as early as June 2012 and continuing through in or around November 2013, GOTTBETTER directed a scheme to manipulate the price and trading volume of DYNA and HBPE stock to create the false appearance of market interest in, and to artificially inflate the value of, both securities. GOTTBETTER conspired with others to manipulate the price and volume of these securities to, among other things, make the companies more attractive to potential investors in various private offerings that GOTTBETTER would broker and which would generate substantial fees and other illicit gains to GOTTBETTER, his law firm, and his broker-dealer, and to sell the stocks at the fraudulently inflated prices to the investing public for a profit.

3. To effectuate the scheme, GOTTBETTER and others generally (1) obtained and concealed control of a significant portion of free-trading shares of DYNA and HBPE stock; (2) agreed to fraudulently inflate the price and trading volume of the stocks through a variety of means, including disseminating false

3

and/or misleading promotional materials to the investing public and engaging
in manipulative trading of the stocks to create the appearance of market
interest; and (3) planned to sell the stocks at the fraudulently inflated prices or
use the fraudulently inflated value of the companies to solicit private
investments, thereby profiting at the expense of the investing public.

## THE CONSPIRACY

4.     From at least as early as in or about June 2012 through in or
about November 2013, in the District of New Jersey and elsewhere, defendant

## ADAM S. GOTTBETTER

knowingly and intentionally conspired and agreed with others to commit
offenses against the United States, to wit: (a) securities fraud, contrary to Title
15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal
Regulations, Section 240.10b-5; and (b) mail fraud, contrary to Title 18, United
States Code, Section 1341.

## OBJECTS OF THE CONSPIRACY

5.     It was a part and object of the conspiracy that GOTTBETTER and
others willfully and knowingly, directly and indirectly, by the use of means and
instrumentalities of interstate commerce, and of the mails, and of facilities of
national securities exchanges, would and did use and employ, in connection
with the purchase and sale of securities, manipulative and deceptive devices
and contrivances in contravention of Title 17, Code of Federal Regulations,
Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud;
(b) making untrue statements of material fact and omitting to state material

4

facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

6.     It was a further part and an object of the conspiracy that GOTTBETTER and others knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did cause things to be deposited with and delivered by the U.S. Postal Service and private and commercial interstate carriers for the purposes of executing such scheme and artifice, contrary to Title 18, United States Code, Section 1341.

## MEANS AND METHODS OF THE CONSPIRACY

7.     Among the means and methods by which the conspirators, including GOTTBETTER, would and did carry out the conspiracy were the following:

**The DYNA Manipulation**

a.     In or around July 2012, GOTTBETTER recruited a trader (the "Trader") to participate in a market manipulation scheme involving DYNA. At some point prior to this time, GOTTBETTER and CC#1, together with others known and unknown, obtained control of a majority of the free-trading shares

5

of DYNA. GOTTBETTER asked the Trader to "walk up" DYNA's stock price by engaging in manipulative trading and creating and disseminating misleading promotional materials touting the fraudulent trading as recent "market" activity, all for the purpose of fraudulently inflating the price and trading volume of DYNA's stock.

### *Manipulative Trading*

b.     Over the course of several meetings at his law firm and other communications during the time period of the conspiracy, GOTTBETTER, CC#1 and the Trader agreed that the Trader would engage in manipulative trading of DYNA's stock to facilitate the scheme. At the time, DYNA had little to no legitimate market interest and virtually no trading activity. GOTTBETTER, together with others known and unknown, used the following methods and took the following steps, among others, to carry out the manipulative trading aspect of the scheme:

i.     In or around December 2012, GOTTBETTER instructed the Trader to create "volume" in DYNA's stock so that the stock would eventually trade "on its own." Additionally, GOTTBETTER agreed that the Trader would trade DYNA stock among various accounts that the Trader controlled to "build a chart" for DYNA stock – in other words, to create the fake appearance of legitimate trading activity, which would be touted as "market" activity to unsuspecting investors in a later promotional mailer.

ii.     In or around April 2013, GOTTBETTER arranged for CC#1 to transfer approximately 1.5 million shares of DYNA stock to the Trader

for approximately five cents per share in a private, non-market transaction for the Trader to use in conducting the manipulative trading.

        iii.     On or about June 12, 2013, after the Trader had acquired a large block of DYNA shares, GOTTBETTER and the Trader again discussed the details of the manipulative trading. GOTTBETTER directed the Trader to buy and sell DYNA stock through nominee accounts that the Trader controlled in small, incremental transactions designed to "walk up" the stock price to create the false appearance of increased trading volume and market interest in DYNA. GOTTBETTER also agreed to take steps to prevent one of the DYNA shareholders not involved in the scheme from interfering with the Trader's manipulative trading.

        iv.     On or about June 13, 2013, at GOTTBETTER's direction, the Trader executed two open market purchases of 2,500 DYNA shares each at $0.20 per share.

        v.     Later in the scheme, in or about July 2013, the Trader informed GOTTBETTER that s/he had developed an algorithmic trading system, or black box (the "Black Box"), for the purpose of manipulating the price of stocks. The Trader explained that s/he controlled approximately thirty-two online brokerage accounts that were opened in the names of foreign nominees, and that a computer program that s/he created and controlled could trade between those accounts to create the appearance of massive volume in any stock. GOTTBETTER directed the Trader to use the Black Box in connection with the DYNA scheme.

7

### *The DYNA Mailer*

c.     In addition to manipulative trading, in or about April 2013, GOTTBETTER directed the Trader to create and disseminate a promotional mailer regarding DYNA (the "DYNA Mailer"). The DYNA Mailer was materially false and misleading. Among other things, it bore a fake newsletter name, the "Growth Stock Guru," a non-existent entity selected to further create the appearance of a legitimate promotion. It also touted recent and future market activity without disclosing that the majority, if not all, of that activity would have been attributable to the manipulative trading coordinated by GOTTBETTER, CC#1 and the Trader. Finally, it failed to disclose in the disclaimer either the Trader's or GOTTBETTER's role in the promotion.

d.     During a consensually recorded meeting concerning the DYNA Mailer, GOTTBETTER was presented with three different stock price projections to include in the DYNA Mailer, none of which accurately reflected the legitimate market interest in DYNA at the time. GOTTBETTER carefully considered the three options and then selected $3.75 per share as the price projection, noting that $3.75 would look more realistic. At the end of the meeting, GOTTBETTER was offered a copy of the DYNA Mailer, but refused to keep it, stating that he "never saw it."

### *Illicit Fees Earned by GOTTBETTER's Law Firm and Broker-Dealer*

e.     During the course of the DYNA manipulation scheme, GOTTBETTER generated at least $344,966.55 in illicit profits associated with

8

"legal" and other professional services that his law firm and broker-dealer rendered to the co-conspirators in furtherance of the scheme.

**The HBPE Manipulation**

f.     In or about July 2013, before GOTTBETTER, CC#1 and the Trader had launched the DYNA promotional campaign and completed the manipulative trading of DYNA's stock, GOTTBETTER recruited the Trader to participate in another, more profitable and elaborate market manipulation and stock promotion scheme involving a different publicly traded company, HBPE, and two of GOTTBETTER's co-conspirators, CC#2 and CC#3. According to GOTTBETTER, CC#2 was a "big hitter," and CC#2 and CC#3 were looking for someone to "walk up" the price of HBPE stock and "run the market" for the "deal."

### *Obtaining and Concealing Control of HBPE Stock*

g.     At some point prior to August 2013, and continuing thereafter, CC#2, together with others known and unknown, obtained control of the majority of free-trading HBPE shares and then took steps to conceal his ownership and control of HBPE stock by, among other things, transferring shares to nominee entities and individuals that they controlled, and transferring shares to overseas trading accounts.

### *Fraudulently Inflating the Price and Volume of HBPE Stock*

h.     After obtaining secret control of the majority of free-trading HBPE shares, GOTTBETTER, CC#2, CC#3, together with others known and

9

unknown, used the following methods, among others, to generate interest in HBPE and fraudulently inflate the price and trading volume of HBPE shares:

i.      CC#2 and CC#3, together with others known and unknown, bought and sold HBPE shares on the open market shortly before the promotional campaign was scheduled to launch. To the investing public, these trades appeared to be purchases by investors not affiliated with HBPE, and gave the false appearance that there was an increasing market demand for the shares.

ii.     In or about August 2013, GOTTBETTER, CC#2, and CC#3, together with others known and unknown, arranged to sell a majority of free-trading HBPE shares that CC#2 secretly controlled to the Trader through pre-arranged trades between the Trader and CC#2's nominees. After acquiring the shares, GOTTBETTER, CC#2 and CC#3 directed the Trader to artificially inflate the price and volume of HBPE's stock by engaging in manipulative trading using the Black Box. The Trader had previously explained to GOTTBETTER, CC#2 and CC#3 that the Black Box would facilitate the manipulation and artificial inflation of HBPE's stock, specifically, by trading the shares through numerous online accounts that the Trader controlled but that were held in the names of foreign nominees.

iii.    In addition, CC#2 arranged for friends and associates to buy approximately $1 million worth of HBPE shares from the Trader at relatively low prices, in pre-arranged transactions, with the understanding that these early buyers would later be told when they could sell at a profit.

10

GOTTBETTER, CC#2 and CC#3 further agreed that the proceeds of these early buyers' purchases would be transferred from the Trader to another co-conspirator, also by means of pre-arranged trades, and the other co-conspirator would use these proceeds to pay for other stock promotion expenses, such as a telephone call campaign and mail campaign falsely touting HBPE's performance, including the price and volume activity generated by the Trader, without disclosing that it was the result of manipulative trading.

iv.     During these discussions, GOTTBETTER commented that they would "have the full month of November [2013] to walk the price to wherever CC#2 wants it walked, [and then] the mail drops December 1 – it's perfect."

### Coordinated Selling of Manipulated HBPE Stock

i.     After fraudulently inflating the price of HBPE's stock in the manner described above, GOTTBETTER, CC#2, and CC#3, together with others known and unknown, planned to sell their shares to unsuspecting victim investors at the fraudulently inflated prices, thereby generating substantial illegal profits, which they agreed to split based upon previously agreed-upon percentages. During the HBPE manipulation, GOTTBETTER commented in one recorded conversation that the only other way in which he and his co-conspirators could create so much "liquidity" (or cash) so quickly was by "robbing a bank."

11

## **OVERT ACTS**

8.      In furtherance of the conspiracy and to effect the unlawful objects thereof, the following overt acts, among others, were committed in the District of New Jersey and elsewhere:

a.      On or about April 12, 2013, GOTTBETTER caused a stock certificate for 1.5 million free trading DYNA shares to be sent via Federal Express to Belleville, New Jersey.

b.      On or about September 23, 2013, GOTTBETTER caused several HBPE stock purchase agreements to be sent via email from his law firm in New York City to the Trader and an individual located in New Jersey.

c.      On or about October 7, 2013, a co-conspirator directed one of his nominees to place a 5,000 share "sell" order for HBPE shares priced at ten cents per share.

d.      On or about October 16, 2013, a co-conspirator sold approximately five million HBPE shares from nominee entities that he controlled.

e.      On or about October 17, 2013, a co-conspirator caused a stock certificate for five million free trading HBPE shares to be sent by Federal Express to Belleville, New Jersey.

All in violation of Title 18, United States Code, Section 371.

12

## **FORFEITURE ALLEGATION**

1.      The allegations contained in all paragraphs of this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      The United States hereby gives notice to the defendant that, upon conviction of the conspiracy to commit securities and mail fraud offense in violation of Title 18, United States Code, Section 371 charged in this Information, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offense.

3.      If by any act or omission of the defendant, any of the property subject to forfeiture described above:

a)      cannot be located upon the exercise of due diligence;

b)      has been transferred or sold to, or deposited with, a third party;

c)      has been placed beyond the jurisdiction of the court;

d)      has been substantially diminished in value; or

e)      has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code,

13

Section 853(p), as incorporated by Title 21, United States Code, Section

2461(c), to seek forfeiture of any other property of the defendant up to the

value of the above-described forfeitable property.

PAUL J. FISHMAN
United States Attorney

14

CASE NUMBER: _____

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

**v.**

## ADAM S. GOTTBETTER

# INFORMATION FOR

# 18 U.S.C. § 371

**PAUL J. FISHMAN**
*UNITED STATES ATTORNEY, NEWARK, NEW JERSEY*

GURBIR GREWAL
NICHOLAS GRIPPO
JENNY KRAMER
*ASSISTANT U.S. ATTORNEYS*
*NEWARK, NEW JERSEY*
*973-645-2700*

CLOSED

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CRIMINAL DOCKET FOR CASE #: 2:14-cr-00467-JLL-1

Case title: USA v. GOTTBETTER                    Date Filed: 08/08/2014
Other court case number: 14-467                  Date Terminated: 05/26/2015

Assigned to: Judge Jose L. Linares

**Defendant (1)**

**ADAM S. GOTTBETTER**                represented by   **DANIEL J FETTERMAN**
*TERMINATED: 05/26/2015*                              KASOWITZ, BENSON, TORRES &
                                                      FRIEDMAN, LLP
                                                      1633 Broadway
                                                      New York, NY 10019-6799
                                                      212-506-1700
                                                      Fax: 212-506-1800
                                                      Email: dfetterman@kasowitz.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Designation: Retained*

                                                      **JOSHUA GREENBLATT**
                                                      KASOWITZ, BENSON, TORRES &
                                                      FRIEDMAN, LLP
                                                      1633 Broadway
                                                      New York, NY 10019-6799
                                                      212-506-1700
                                                      Fax: 212-506-1800
                                                      Email: jgreenblatt@kasowitz.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Designation: Retained*

                                                      **MARC E KASOWITZ**
                                                      KASOWITZ, BENSON, TORRES &
                                                      FRIEDMAN, LLP
                                                      1633 Broadway
                                                      New York, NY 10019-6799
                                                      212-506-1700
                                                      Fax: 212-506-1800
                                                      Email: mkasowitz@kasowitz.com
                                                      *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

### Pending Counts

18:371 CONSPIRACY TO DEFRAUD
THE UNITED STATES D/O/O:
06/2012 - 11/2013
(1)

### Disposition

Imprisonment for a term of 18 Months;
1 Year Supervised Release with
conditions; Fine $60,000 and Special
Assessment $100 (due immediately)

### Highest Offense Level (Opening)

Felony

### Terminated Counts

None

### Disposition

### Highest Offense Level (Terminated)

None

### Complaints

None

### Disposition

---

### Plaintiff

**USA**

represented by **JENNY R. KRAMER**
OFFICE OF THE US ATTORNEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07102
(973) 645-2700
Email: jenny.kramer@usdoj.gov
*TERMINATED: 04/01/2015*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**NICHOLAS PAUL GRIPPO**
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
970 BROAD STREET
NEWARK, NJ 07102
973-645-2700
Email: nicholas.grippo@usdoj.gov
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/08/2014 | 1 | MOTION to Seal/Close the courtroom during a future hearing and seal portions of the docket by USA as to JOHN DOE. (Attachments: # 1 Redacted Letter Brief, # 2 Redacted Text of Proposed Order) (lr,) (Entered: 08/11/2014) |
| 08/08/2014 | 3 | ORDER as to JOHN DOE: The Government's Motion to Seal shall be heard on 09/02/2014 at 10:00 AM in Newark - Courtroom 5D before Judge Jose L. Linares. Any party seeking to intervene shall file their Motion to Intervene and supporting brief on or before 09/02/2014 at 10:00 a.m. Signed by Judge Jose L. Linares on 08/08/2014. (lr,) (Entered: 08/11/2014) |
| 09/02/2014 | 5 | ORDER # 2 Seal/ Close the Courtroom as to JOHN DOE. Signed by Judge Jose L. Linares on 9/2/2014. (mrd, ) (Entered: 09/02/2014) |
| 09/03/2014 | 6 | INFORMATION as to JOHN DOE (1) count(s) 1. (lr, ) (Entered: 09/04/2014) |
| 09/03/2014 | 7 | WAIVER OF INDICTMENT by JOHN DOE (lr, ) (Entered: 09/04/2014) |
| 09/03/2014 | 8 | Minute Entry for proceedings held before Judge Jose L. Linares: Initial Appearance as to JOHN DOE held on 9/3/2014. Plea Agreement Hearing as to JOHN DOE held on 9/3/2014. Plea entered by JOHN DOE (1) as to Count 1, GUILTY. Sentencing set for 12/15/2014 01:30 PM in Newark - Courtroom 5D before Judge Jose L. Linares. Court Reporter/Recorder PHYLLIS T. LEWIS. (lr,) (Entered: 09/04/2014) |
| 09/03/2014 | 9 | APPLICATION for permission to enter Plea of Guilty as to JOHN DOE. (lr, ) (Entered: 09/04/2014) |
| 09/03/2014 | 10 | PLEA AGREEMENT as to JOHN DOE (lr, ) (Entered: 09/04/2014) |
| 09/03/2014 | 11 | ORDER Setting Conditions of Release as to JOHN DOE (1) $500,000 PR BOND. (Finance notified). Signed by Judge Jose L. Linares on 09/03/2014. (lr, ) (Entered: 09/04/2014) |
| 09/03/2014 | | PR Bond Entered as to JOHN DOE in amount of $ $500,000, (lr, ) (Entered: 09/04/2014) |
| 09/04/2014 | 12 | Transcript of Proceedings as to JOHN DOE held on September 3, 2014, before Judge JOSE L. LINARES. Court Reporter/Transcriber Phyllis Lewis (732-735-4522). PROCEEDINGS. This is the complete unredacted/sealed version of the transcript and is unavailable for public viewing. (ek) (Entered: 09/04/2014) |
| 11/19/2014 | | Set/Reset Hearings as to JOHN DOE: Sentencing set for 4/22/2015 10:00 AM in Newark - Courtroom 5D before Judge Jose L. Linares. (lr, ) (Entered: 11/19/2014) |
| 04/06/2015 | | Set/Reset Hearings as to JOHN DOE: Sentencing set for 5/26/2015 11:00 AM in Newark - Courtroom 5D before Judge Jose L. Linares. (lr, ) (Entered: 04/06/2015) |

| 05/20/2015 | 15 | Order to unseal case and to change caption as to ADAM S. GOTTBETTER. Signed by Judge Jose L. Linares on 5/20/15. (dc, ) (Entered: 05/20/2015) |
| --- | --- | --- |
| 05/26/2015 | 16 | Minute Entry for proceedings held before Judge Jose L. Linares:Sentencing held on 5/26/2015 for ADAM S. GOTTBETTER (1), Count(s) 1. Imprisonment for a term of 18 Months; 1 Year Supervised Release with conditions; Fine $60,000 and Special Assessment $100 (due immediately). (Court Reporter/Recorder PHYLLIS T. LEWIS.) (lr, ) (Entered: 05/26/2015) |
| 05/26/2015 | 17 | CONSENT JUDGMENT AND ORDER OF FORFEITURE (MONEY JUDGMENT) in the amount of $344,966.55 as to ADAM S. GOTTBETTER. ORDERED that the defendant shall forfeit to the United States the sum of $344,966.55 (Finance notified), Judgment Index Record entered in favor of USA against ADAM S. GOTTBETTER. Signed by Judge Jose L. Linares on 5/26/2015. (mrd, ) (Entered: 05/27/2015) |
| 05/26/2015 | 18 | JUDGMENT as to ADAM S. GOTTBETTER (1), Count(s) 1 of the information, SENTENCE: Imprisonment for a term of 18 Months; Supervised Release for a term of 1 year w/special conditions; Fine: $60,000 (due immediately); Special Assessment $100 (due immediately); Ordered Deft. to surrender at the institution designated by the BOP on 7/13/15 at or before Noon; Forfeiture: $344,966.55 in U.S. Currency, etc., (Finance notified). Signed by Judge Jose L. Linares on 5/26/15. (dc, ) Modified on 5/29/2015 (dc). (Entered: 05/29/2015) |
| 06/08/2015 | 19 | STIPULATION AND ORDER as to ADAM S. GOTTBETTER Ordered that Deft. may surrender for service at the institution designated by the Bureau of Prisons on Monday, July 27, 2015 at or before Noon. Signed by Judge Jose L. Linares on 6/8/15. (dc, ) (Entered: 06/08/2015) |
| 06/24/2015 | 20 | SATISFACTION OF JUDGMENT by USA (Finance notified) (FARRELL, LEAH) (Entered: 06/24/2015) |
| 07/01/2015 | 21 | ORDER permitting deft. to travel internationally from 7/6/15 to 7/13/15 as to ADAM S. GOTTBETTER. Signed by Judge Jose L. Linares on 7/1/15. (dc, ) (Entered: 07/01/2015) |
| 07/02/2015 | 22 | SUPPLEMENTAL ORDER as to ADAM S. GOTTBETTER re: travel internationally Signed by Magistrate Judge Mark Falk on 7/2/15. (nm, ) (Entered: 07/02/2015) |